IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SKILLFORCE, INC.                    )
and                                 )
PATRICIA E. TICHENOR,               )
    Appellants,                     )        Case No. 1:14-cv-42
                                    )
        v.                      )
                                    )
DEBORAH K. HAFER,                   )
    Appellee.                       )
                                    )

## MEMORANDUM OPINION

At issue in this bankruptcy appeal is whether appellants Skillforce, Inc. ("Skillforce") and

Patricia E. Tichenor ("Ms. Tichenor") willfully violated the 11 U.S.C. § 362(a)(1) automatic stay

by failing to withdraw post-judgment debtor's interrogatories,[1] or to prevent a hearing on the

interrogatories, after the Loudon County General District Court ("State Court") Judge, when

advised of the bankruptcy, first correctly stayed the interrogatories, but then ordered the parties

to appear for a subsequent status hearing regarding the interrogatories.

For the reasons that follow, the Bankruptcy Court correctly concluded that appellants

willfully violated the automatic stay, but a remand is required for the Bankruptcy Court to make

specific findings on damages.

---

[1] In Virginia, the process for discovery in aid of execution on a judgment is known as debtor's
interrogatories. *See* Va. Code §§ 8.01–506; §§ 16.1–103.

I.

As the Bankruptcy Court's factual findings are reviewed for clear error,[2] and the parties

do not contest those findings, they are adopted here in full, as follows:[3]

1) On October 19, 2012, the General District Court of Loudoun County, Virginia, entered an *in personam* judgment against the Debtor, Ms. Hafer, in favor of Skillforce, in the amount of $12,997.11, consisting of $5,203.19 in principal, attorney's fees of $3,292.28, costs of $68, and prejudgment interest. The judgment arose out of Ms. Hafer's guaranty of the debts of Hafer Construction, Inc., to Skillforce.

2) On December 27, 2012, Ms. Tichenor, as counsel for Skillforce, submitted a request for a Summons to Answer Debtor's Interrogatories, directed to Ms. Hafer as the judgment debtor. The Clerk issued the Summons on December 28th, returnable to February 6, 2013.

3) In connection therewith, Ms. Tichenor filed a request for a Subpoena Duces Tecum, to compel Ms. Hafer to bring with her documents related to her assets and liabilities. The Subpoena was issued, commanding Ms. Hafer to bring with her to the debtor's interrogatories hearing the documents identified in the attachment to the Subpoena.

4) Ms. Hafer filed a Voluntary Petition under Chapter 7 with this Court at 3:53 a.m. on the morning of the debtor's interrogatories hearing, February 6th.

5) Ms. Hafer listed Skillforce as a creditor in her Schedules, care of Ms. Tichenor at Ms. Tichenor's office address in Leesburg. Skillforce is listed in the Clerk's matrix of mailing addresses for creditors, also care of Ms. Tichenor at her address in Leesburg. Skillforce also filed a proof of claim in the case, on April 2, 2013.

6) Ms. Hafer brought a copy of the Notice of Bankruptcy Case Filing with her to the debtor's interrogatories hearing. She and Ms. Tichenor had a brief encounter before the Judge took the bench, in which Ms. Tichenor described the process of debtor's interrogatories, explaining that the Judge would swear Ms. Hafer in, and they would then go to a conference room, where the examination would be conducted. Ms. Hafer did not present Ms. Tichenor with the Notice of Bankruptcy Filing during this brief, pre-hearing encounter.

---

[2] Rule 8013, Fed. R. Bankr. P.; *see also In re Official Comm. of Unsecured Creditors for Dornier Aviation (N. Am.), Inc*, 453 F.3d 225, 231 (4th Cir. 2006) [hereinafter "*Dornier Aviation*"].

[3] *In re Hafer*, 13-10568-BFK, 2013 WL 5925167, at *1-*3 (Bankr. E. D. Va. Nov. 5, 2013).

7) When the Judge took the bench, Ms. Hafer presented the Judge with her Notice of Bankruptcy Filing.

8) What occurred next at the hearing is the subject of some conflict in the testimony. Ms. Hafer testified that Ms. Tichenor advised the Judge that she had her court reporter present, and that she was prepared to proceed with the debtor's interrogatories, notwithstanding the bankruptcy filing. Ms. Hafer further testified that the Judge refused to allow Ms. Tichenor to proceed with the debtor's interrogatories, at which point, Ms. Tichenor requested that the court continue the debtor's interrogatories hearing for status.

9) Ms. Tichenor, on the other hand, testified that she did not seek to proceed with the debtor's interrogatories hearing that day. She further testified that she did not request that the court continue the matter for a status hearing; rather, she testified that the court continued the matter on its own.

10) The Court also heard the testimony of Ms. McManus, who is the court reporter engaged by Ms. Tichenor for purposes of the debtor's interrogatories hearing. The Court found Ms. McManus to be pleasant, forthright, and highly credible. Ms. McManus was in the courtroom when the Judge called the case on February 6, 2013. Ms. McManus testified that, when presented with the Notice of Bankruptcy Filing, the Court asked Ms. Tichenor whether she was aware of Ms. Hafer's bankruptcy filing. Ms. Tichenor said that she was not aware of the filing. Ms. McManus testified that it was clear that the Judge was not going to proceed with the debtor's interrogatories hearing on that date. Ms. McManus further testified that Ms. Tichenor did not seek to proceed with the debtor's interrogatories hearing, that Ms. Tichenor did not request that the matter be continued for status, and that the Judge continued the matter for status without her requesting him to do so. This Court accepts Ms. McManus's testimony and finds that: (a) Ms. Tichenor did not seek to proceed with the debtor's interrogatories hearing on February 6th; and (b) the Judge continued the debtor's interrogatories hearing for status, to May 1, 2013, without Ms. Tichenor requesting that he do so.

11) Ms. Hafer testified that she was "appalled" and "shocked" by the continuance, and that she felt "bullied" into having to appear a second time in court. She testified that she felt compelled to appear at the May 1 status hearing, for fear of having a capias issued for her arrest.

12) Mr. Andrews, Ms. [Hafer's][4] bankruptcy counsel, filed a Suggestion of Bankruptcy with the General District Court on March 14, 2013 (though, he

---

[4] The Bankruptcy Court Opinion mistakenly states that Mr. Andrews was Ms. Tichenor's bankruptcy counsel, when in fact Mr. Andrews was Ms. Hafer's bankruptcy counsel.

mailed it directly to Skillforce at its offices in Baltimore, MD, and did not mail it to Ms. Tichenor).

13) The General District Court held a status hearing on May 1, 2013. Ms. Hafer was present at the status hearing on May 1st, as was Ms. Tichenor. No court reporter was present. Ms. Hafer protested to the Judge that the status conference was a violation of her rights as a debtor in bankruptcy. The Judge took a recess. When he re-called the case, he asked Ms. Hafer what her view of the matter was. She responded (according to her own testimony) that "I understand that everything is stayed, and it's the Court's practice to set a status for bankruptcy review."

14) Ms. Tichenor's testimony in this regard is consistent with an Affidavit that she submitted in opposition to the Debtor's Motion to Show Cause in this case, in which Ms. Tichenor stated:

> Between February 6, 2013, and May 1, 2013, I received no communications from Deborah K. Hafer, or an attorney representing Ms. Hafer, indicating that the Loudoun Court was without power or jurisdiction to order a status review of the matter or that it was a violation of any federal law. It was my understanding from prior cases before the Loudoun Court that the use of status review is routine, used to monitor whether the debtor actually completes the bankruptcy or abandons the bankruptcy (which has occurred). If the bankruptcy filing is later abandoned, it would be terribly inefficient for the Loudoun Court to have simply dismissed the pending interrogatories and summons, which would then have to be re-filed and re-served. It has never been my understanding or belief that the Court's use of a bankruptcy review violated the automatic stay, as it is merely to review whether a party has continued with bankruptcy, whether there is still a stay in effect, and/or whether there has been a discharge granted.

15) The parties agree that the May 1st status hearing lasted about an hour and a half (including the time spent waiting for the Judge to call the case). The Judge overruled Ms. Hafer's objections, and set the case again for a status hearing, on September 9, 2013.

16) On May 20, 2013, Ms. Hafer received her discharge in this case. The Clerk mailed a copy of the Notice of Discharge to all creditors and other parties in interest on May 23, 2013.

17) On May 28, 2013, Ms. Tichenor filed a Praecipe with the Loudoun County General District Court, requesting that the matter be "dismissed as unsatisfied and removed from the Court's docket of September 9, 2013, at 10:00 a.m."

18) On August 20, 2013, the Debtor filed her Motion for Sanctions against Skillforce and Ms. Tichenor. Ms. Tichenor testified that she received this Motion on August 22, 2013.

19) The next day, on August 23, 2013, Ms. Tichenor filed an Amended Praecipe with the General District Court, this time requesting that the matter be "dismissed as discharged in bankruptcy."

Thereafter, on November 5, 2013, the Bankruptcy Court issued a decision holding that there was a willful violation of the automatic stay and awarding Ms. Hafer $500 for lost professional time and $250 in attorneys' fees. *In re Hafer*, 13-10568-BFK, 2013 WL 5925167 (Bankr. E. D. Va. Nov. 5, 2013). On January 15, 2014, appellants timely appealed the Bankruptcy Court's decision.[5]

## II.

The Bankruptcy Court's conclusion that a violation of the automatic stay occurred is a legal determination subject to *de novo* review here, whereas the Bankruptcy Court's conclusion that the violation was willful is a factual determination subject to review for clear error. *Dornier Aviation*, 453 F.3d at 231 ("We review the bankruptcy court's legal determinations de novo and its factual findings for clear error."); *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002) ("Whether the automatic stay provisions of 11 U.S.C. § 362(a) have been violated is a question of law reviewed de novo. . . . Whether a party has willfully violated the automatic stay is a question of fact reviewed for clear error.").

The review of the Bankruptcy Court's decision properly begins with recognition of several settled principles of bankruptcy law. First, it is important to note that § 362(a)(1) of the

---

[5] Originally, appellant Skillforce filed an appeal docketed as case no. 1:14-cv-42, and appellant Ms. Tichenor filed a separate appeal docketed as case no. 1:14-cv-43. Thereafter, the parties filed a consent motion to consolidate case nos. 1:14-cv-42 and 1:14-cv-43 under case no. 1:14-cv-42, which was granted by a January 17, 2014 Order. *See Skillforce v. Hafer*, 1:14-cv-42 (E.D. Va. Jan. 17, 2014) (Order); *Tichenor v. Hafer*, 1:14-cv-43 (E.D. Va. Jan. 17, 2014) (Order).

Bankruptcy Code bars not only "the commencement" of any action against the debtor, but also, as is relevant here, the "*continuation*" of any such action that was commenced before the commencement date of the bankruptcy. 11 U.S.C. § 362(a)(1) (emphasis added). Nor is there any doubt about the importance of the automatic stay. It is a "fundamental debtor protection" that "gives the debtor a breathing spell from its creditors," thereby "permit[ting] the debtor to attempt a repayment or reorganization plan." *Grady v. A.H. Robins Co.*, 839 F.2d 198, 200 (4th Cir. 1988) (quoting H.R. Rep. No. 95–595, at 340–41 (1977); S. Rep. No. 95–989, at 54–55 (1978), reprinted in U.S.C.C.A.N. 5787, 5840 & 6296–97). The Bankruptcy Code clearly provides that the automatic stay applies to "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." 11 U.S.C. § 362(a)(2). Simply put, all actions to enforce a judgment against a debtor must be stayed during the pendency of the bankruptcy proceeding. Because the automatic stay is a fundamental debtor protection, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees." 11 U.S.C. § 362(k)(1). Thus, a party seeking damages for violation of the automatic stay must establish three elements:

    A. that a violation occurred;

    B. that the violation was committed willfully;

    C. that the violation caused actual damages.[6]

Importantly, a debtor must prove the willful violation of an automatic stay by clear and convincing evidence[7] and must prove damages by a preponderance of the evidence.[8] Each of these elements merits separate consideration.

---

[6] *In re Bright*, 334 B.R. 19, 24 (Bankr. D. Mass. 2005) *aff'd*, 338 B.R. 530 (B.A.P. 1st Cir. 2006); *see also* 9B Am. Jur. 2d *Bankruptcy* § 1948 (2006).

## III.

### A.

The facts pertinent to the Bankruptcy Court's conclusion that appellants violated the automatic stay may be succinctly stated. On the morning of February 6, 2013, Ms. Hafer, the debtor, and Ms. Tichenor, creditor Skillforce's counsel, assembled at the State Court pursuant to debtor's interrogatories and a summons that Ms. Tichenor caused to be issued in aid of collecting a State Court judgment for $12,997.11 against the debtor and in favor of the creditor, Skillforce. Prior to the commencement of the hearing—indeed in the wee hours of that same morning (3:53 a.m.)—Ms. Hafer, unbeknownst to Ms. Tichenor and Skillforce, filed a Chapter 7 petition in the Bankruptcy Court. When the State Court judge took the bench, Ms. Hafer provided the judge with the notice of the bankruptcy filing. The State Court judge first appropriately stayed the proceeding and did not proceed with the debtor's interrogatories, but then *sua sponte* and somewhat paradoxically, continued the debtor's interrogatories for a status hearing on May 1, 2013. Ms. Tichenor did not press to proceed with the debtor's interrogatories, nor did she request that the matter be continued for a status hearing.[9] The record does not reflect that either Ms. Hafer or Ms. Tichenor raised any objection to the State Court judge's scheduling of the May 1 status hearing.

---

[7] *In re Georgetown Steel Co., LLC*, 318 B.R. 313, 334 (Bankr. D.S.C. 2004); *see also* 9B Am. Jur. 2d *Bankruptcy* § 1948 (2006).

[8] *In re Heghmann*, 316 B.R. 395, 404-05 (B.A.P. 1st Cir. 2004); *see also* 9B Am. Jur. 2d *Bankruptcy* § 1948 (2006).

[9] The parties disputed what occurred at the February 6 hearing. Ms. Hafer claimed that Ms. Tichenor pressed to proceed with the debtor's interrogatories notwithstanding the bankruptcy filing while Ms. Tichenor testified she neither pressed to proceed nor requested that the State Court continue the interrogatories for a status hearing. The Bankruptcy Court resolved this conflict in favor of Ms. Tichenor based on the testimony of Ms. McManus, the court reporter engaged by Ms. Tichenor, who was present at the hearing.

It appears that nothing of substance occurred in this matter between the February 6 hearing and the May 1 status hearing.[10] At the May 1 status hearing, Ms. Hafer voiced her objection to the hearing as a violation of her rights as a debtor in bankruptcy. The State Court judge overruled this objection and set the case again for a status hearing on September 9, 2013. And then, less than three weeks later, Ms. Hafer received a discharge in bankruptcy that discharged her obligation under the judgment. A week later, Ms. Tichenor filed a praecipe with the State Court requesting that the matter be "dismissed as discharged in bankruptcy."

These facts frame the question presented. Of course, had the State Court judge merely stayed the proceeding, and perhaps directed the parties to advise the court once the bankruptcy proceeding had concluded, there would be no occasion to consider whether a violation of the automatic stay had occurred. But because the State Court judge *continued* the debtor's interrogatories for a status hearing, the question—decided by the Bankruptcy Court and presented here—is whether in that circumstance Ms. Tichenor and Skillforce had an affirmative duty to take steps to ensure that the debtor's interrogatories proceeding did not violate the automatic stay. This could have been accomplished either by withdrawing the interrogatories and thereby obviating the need for a status hearing or by requesting that the State Court judge cancel the May 1 hearing and stay all proceedings pending completion of the bankruptcy. Viewed more broadly, the question presented on appeal is whether the May 1 status hearing constituted a "continuation" of an action against the debtor and therefore a violation of the automatic stay that appellants had a duty to take action to prevent. *See* 11 U.S.C. § 362(a)(1).

---

[10] For reasons that do not appear in the record, Ms. Hafer, by counsel, did not file a suggestion of bankruptcy in the State Court until March 14, 2013. The parties do not suggest that this fact is material to the appeal.

The question whether the automatic stay in some circumstances imposes on creditors an affirmative duty to act is not a novel question. A number of courts have wrestled with this question, imposing a duty to act in some circumstances and not imposing a duty to act in others. For example, the Ninth Circuit has held that, "[t]he maintenance of an active collection action alone adequately satisfies the statutory prohibition against 'continuation' of judicial actions. . . . § 362(a)(1) imposes an affirmative duty to discontinue post-petition collection actions." *Eskanos*, 309 F.3d at 1215. Similarly, courts have found (i) that a creditor has a duty to release a pre-petition garnishment when bankruptcy is filed,[11] (ii) that a creditor in possession of a lien must return the property to the debtor when a bankruptcy petition is filed,[12] and (iii) that a creditor has an obligation to discontinue any post-petition collection actions pending against a debtor in any non-bankruptcy forum.[13] By contrast, a district court in New Mexico reversed a bankruptcy court and held that a bank's post-petition placement of an administrative freeze on the debtor-depositor's accounts did *not* violate the automatic stay. *Wells Fargo Bank, N.A. v. Jimenez*, 406 B.R. 935, 945 (D.N.M. 2008) (reasoning that the administrative freeze served to preserve the bankruptcy estate). In addition, there is a settled exception that permits the performance of

---

[11] *In re Brugueras*, 2012 WL 6055603, at *7 (Bankr. E. D. Va. 2012) (finding a pre-petition wage garnishment to be an automatic stay violation); *In re Manuel*, 212 B.R. 517, 519 (Bankr. E. D. Va. 1997) ("There can be little question that the continuation postpetition of a garnishment proceeding against a debtor is a violation of the automatic stay."); *Baum v. United Va. Bank (In re Baum)*, 15 B.R. 538, 541 (Bankr. E. D. Va. 1981) ("The act of turning over the funds by the State court and the acceptance and retention of funds by the bank after the filing of the petition were a violation of the automatic stay.").

[12] *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 212 (1983); *In re Moffett*, 288 B.R. 721, 732 (Bankr. E. D. Va. 2002) (denying relief from the automatic stay and ordering return of a vehicle to the debtor, in a Chapter 13 case); *In re Woolridge*, 2001 WL 540302, at *1–2 (Bankr. E. D. Va. 2001); *In re Brown*, 237 B.R. 316, 320–21 (Bankr. E. D. Va. 1999).

[13] *In re Daniels*, 316 B.R. 342 (Bankr. D. Idaho 2004) (finding an automatic stay violation where, after being notified of debtor's bankruptcy filing, creditor failed to take any steps to quash arrest warrant that it had obtained as part of its post-judgment collection efforts).

"ministerial acts" during the automatic stay, defined as acts in which "an official's duty is delineated by . . . a law or a judicial decree with such crystalline clarity that nothing is left to the exercise of the official's discretion or judgment." *In re Soares*, 107 F.3d 969, 974-75 (1st Cir. 1997) ("Ministerial acts, even if undertaken in a state judicial proceeding subsequent to a bankruptcy filing, do not fall within the proscription of the automatic stay."). Courts have found that "ministerial acts" include acts such as the post-petition entry of a previously-ordered judgment on the docket[14] and "routine certification" by the clerk.[15] In addition, courts have also held that the duty to avoid automatic stay violations is not solely on the creditor; there is also a duty on the debtor to protect her rights and mitigate her damages.[16]

The thread that ties these cases together and harmonizes them is the principle that may be stated as follows: A creditor or the creditor's legal representative has an affirmative duty, post-petition, to discontinue any proceeding it has initiated or continued, or to take other appropriate steps to halt that proceeding if the proceeding: (i) jeopardizes or threatens in any way the integrity of the bankruptcy estate, or (ii) exposes the debtor to harassment or coercion or otherwise inhibits the debtor's "breathing spell from [her] creditors."[17]

This principle, applied here, points persuasively to the conclusion that the Bankruptcy Court correctly concluded that appellants' failure to take steps to cancel the May 1 status hearing or discontinue the debtor's interrogatories constituted a violation of the automatic stay. To begin with, the May 1 status hearing was clearly a "continuation" of a judicial proceeding "to recover a

---

[14] *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 528 (2d Cir. 1994).

[15] *Heikkila v. Carver (In re Carver )*, 828 F.2d 463, 464 (8th Cir.1987).

[16] *See, e.g., In re Barr*, 318 B.R. 592 (Bankr. M.D. Fla. 2004); 9B Am. Jur. 2d *Bankruptcy* § 1948 (2006).

[17] *Grady*, 839 F.2d at 200.

claim against the debtor" of the type contemplated in 11 U.S.C. § 362(a)(1). Appellants' argument that the status hearing was a ministerial act rather than a continuation of a proceeding is unavailing, as the ministerial act exception to automatic stay violations applies to acts that are "essentially clerical in nature"[18] or "automatic occurrences that entail no deliberation, discretion, or judicial involvement,"[19] such as a docket notation. The State Court's decision to require the parties to appear in person at a subsequent status hearing clearly required discretion and judicial involvement, and hence appellants' argument that the status hearing was a ministerial act is unpersuasive.

Similarly unpersuasive is appellants' argument that the May 1 status hearing did not constitute a violation of the automatic stay because the status hearing did not jeopardize or indeed have any effect on the preservation of the bankruptcy estate. Although appellants correctly note that the May 1 status hearing did not jeopardize the bankruptcy estate, the flaw in this argument is that it ignores a second basis that gives rise to an affirmative obligation on the creditor; namely that a creditor has an affirmative duty to act where the failure to act would expose the debtor to harassment or coercion or otherwise inhibit the debtor's "breathing spell from [her] creditors."[20] There can be no doubt that requiring Ms. Hafer to attend the May 1 status hearing is a violation of this second principle.

Although attending a single status hearing may seem to be insignificant, it nonetheless hinders a debtor's ability to have respite from her creditors to make a reorganization plan. Moreover, it is worth noting that at the May 1 hearing, the State Court set yet another status

---

[18] *Soares*, 107 F.3d at 974-75.

[19] *McCarthy, Johnson & Miller v. North Bay Plumbing, Inc. (In re Pettit)*, 217 F.3d 1072, 1080 (9th Cir. 2000).

[20] *Grady*, 839 F.2d at 200.

hearing for September 9, 2013. A debtor with multiple pending court proceedings could be subject to repeated appearances before various courts, which would give rise to precisely the type of "downhill snowballing" of proceedings that has led courts to place the responsibility to stop such "snowballing" squarely on the creditor.[21] To avoid this conclusion, appellants attempt to draw an analogy between this case and cases involving post-petition notices postponing scheduled foreclosure sales such as *In re Atlas Mach. & Iron Works, Inc.* 239 B.R. 322 (Bankr. E.D. Va. 1998). This analogy fails. In *Atlas Machine*, the creditor sent out notices postponing a previously scheduled foreclosure sale of the debtor's property. *Id.* This required no action by the debtor and was done in order to prevent the sale of the debtor's assets. *See id.* Simply put, foreclosure postponement notices "maintained the status quo, and did not harass, interfere or gain any advantage [for the creditor]." *Id.* at 330 (quoting *Matter of Roach*, 660 F.2d 1316, 1319 (9th Cir. 1981)). By contrast, requiring a debtor to retain counsel and appear in court for a status hearing does harass the debtor and could have an impermissible coercive effect on the debtor. The status quo in this instance is properly defined as the pending judgment against Ms. Hafer. Neither the May 1 status hearing nor the debtor's interrogatories were necessary to maintain the pendency of that judgment. Thus, the harmonizing principle—that a creditor has an affirmative duty to act to prevent an automatic stay violation where (i) the bankruptcy estate is in jeopardy or (ii) the debtor is exposed to harassment or coercion—compels affirmance of the Bankruptcy Court's conclusion that appellants' failure to take action to prevent the May 1 status hearing was an automatic stay violation.

---

[21] *In re Williams-Nobles*, 459 B.R. 242, 246 (Bankr. E.D. Va. 2011) ("*It is the creditor's responsibility to stop the downhill snowballing of a continuing garnishment.*") (emphasis in original).

- 12 -

Nor is this conclusion rebutted by appellants' citation to a quote in *Williams-Nobles* stating that "compliance with the automatic stay does not mandate that counsel for the judgment creditor undertake the legal work necessary to prepare the dismissal order in every instance." 459 B.R. at 246. *Williams-Nobles*, in which counsel for creditor had attempted unsuccessfully to contact an unresponsive debtor's counsel in order to dismiss a wage garnishment, stands for the simple proposition that either debtor's counsel or creditor's counsel may bear responsibility for dismissal of a pending action, depending on the circumstances of the case. *See id.* The circumstances of this case point persuasively to the conclusion that here it was appellants' responsibility because they had initiated the debtor's interrogatories proceeding.

Accordingly, because appellants' failure to take steps to prevent the May 1 status hearing was a continuation of a proceeding against Ms. Hafer that exposed her to harassment or coercion, the Bankruptcy Court correctly found that a violation of the automatic stay occurred.

**B.**

Given that the Bankruptcy Court correctly found a violation of the automatic stay occured, it is next necessary to consider whether that violation was, as the statute requires, "willful" on the part of appellants.[22] To begin with, it is important to note that persuasive case law makes clear that the willfulness requirement in § 362(k)(1) does not require the specific intent to violate the automatic stay; rather, it is sufficient to show that the creditor knew that the stay was in effect and then intentionally committed an act or failed to act, which had the effect of violating the stay. *Budget Serv. Co. v. Better Homes*, 804 F.2d 289, 292–93 (4th Cir. 1986)

---

[22] *See* 11 U.S.C. § 362(k)(1) ("[A]n individual injured by any *willful* violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees.") (emphasis added).

(finding an automatic stay violation where creditor "knew of the pending [bankruptcy] petition and intentionally attempted to repossess [debtor's] vehicles in spite of it").[23]

There is no question that appellants had knowledge of the automatic stay, as it is undisputed that Ms. Hafer informed appellants that she had filed for bankruptcy at the February 6 hearing. And, as established above, appellants' failure either to withdraw the debtors' interrogatories, or to request that the State Court cancel the May 1 status hearing, resulted in a violation of the automatic stay. Therefore, there is no clear error in the Bankruptcy Court's factual finding that appellants' failure to take action to prevent the May 1 status hearing was willful. And accordingly, the Bankruptcy Court's willfulness determination must be affirmed.

## C.

Finally, given that the first two elements required for an award of damages for violation of the § 362(k)(1) automatic stay have been satisfied, analysis now proceeds to the third element; namely whether the violation caused actual damages. The burden is on the debtor to establish actual damages—*i.e.*, damages actually incurred by the debtor—by a preponderance of the evidence. *In re Seaton*, 462 B.R. 582, 595 (Bankr. E.D. Va. 2011); *see also In re Fernandez*, 132 B.R. 775, 780 (M.D. Fla. 1991) ("It is the determination of the Court that the Bankruptcy Judge erred in the awarding of attorney fees absent any showing of fees actually incurred."). Here, the Bankruptcy Court awarded $500 in damages for lost professional time and $250 in attorneys' fees as damages flowing from Ms. Hafer's appearance at the May 1, 2013 status hearing. The

---

[23] *See also In re Atl. Bus. & Cmty. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990) ("The bankruptcy courts have construed 'willful' as used in the code to mean an intentional or deliberate act done with knowledge that the act is in violation of the stay."); *In Re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989) ("[The bankruptcy] statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional."); 9 Am. Jur. 2d *Bankruptcy* § 286 ("'Willful violation,' as used in this provision, means a deliberate and intentional act done with knowledge that it is in violation of the stay.").

question presented is whether the Bankruptcy Court's findings support the decision to award this amount of actual damages.

Although findings of fact relating to damages are subject to review for clear error,[24] the Bankruptcy Court did not make any separate findings of fact on the damages issue other than findings of fact that are implicit in the Bankruptcy Court's conclusions regarding the amount of damages to be awarded. Moreover, the Bankruptcy Court's conclusion on the amount of damages fails to take account of conflicting record evidence. Thus, the Bankruptcy Court based its award of damages for lost professional time on Ms. Hafer's claim that her compensation rate was $125 per hour, for a total of four hours.[25] Appellants argue that Ms. Hafer's stated rate of income is contradicted by other record evidence; namely Ms. Hafer's testimony that her gross annual income is $73,000 and her bankruptcy petition, which also reflects an annual income of approximately $73,000. This evidence contradicts Ms. Hafer's claim that her time is billed at $125 per hour. Indeed, assuming a 40-hour work week and 50 work weeks per year, an annual income of $73,000 amounts to hourly earnings of $36.50. Additionally, appellants argue that Ms. Hafer self-reported that her income is commission-based and that she has not proffered any evidence of lost commission income as a result of the May 1 status hearing. The Bankruptcy Court, however, did not weigh these conflicting pieces of evidence to make factual findings on the proper hourly rate of income that should be used to calculate Ms. Hafer's lost professional time.

---

[24] *Dornier Aviation*, 453 F.3d at 231.

[25] Although the record reflects that the May 1, 2013 status hearing (including waiting time) lasted only one hour and 30 minutes, the bankruptcy court allowed one hour of travel time each way and 30 minutes for parking. This was based on Ms. Hafer's testimony that the status hearing occupied four to six hours of her time.

Similarly, the bankruptcy court cited no evidence and provided no reasoning for its conclusion that an award of $250 in attorneys' fees was reasonable and proportional to what is at issue in the litigation. The Bankruptcy Court was correct to note that attorneys' fees under § 362(k)(1) must be shown to be reasonable and necessary. *See Seaton,* 462 B.R. at 605. Yet, before the analysis of reasonableness and necessity of claimed attorneys' fees even begins, a debtor must first demonstrate, by a preponderance of the evidence,[26] that she is *actually* liable for the claimed fees. *See* 11 U.S.C. § 362(k)(1) "[A]n individual injured by any willful violation of a stay provided by this section shall recover *actual* damages, including costs and attorneys' fees.") (emphasis added); Black's Law Dictionary: Actual Damages (9th ed. 2009) ("An amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses."). Although $250, on its face, is a reasonable sum for attorneys' fees in this instance, appellants correctly argue that Ms. Hafer has failed to proffer any evidence that she *actually* incurred these fees as required by the statute. And indeed, Ms. Hafer appeared at the May 1, 2013 status hearing without counsel.[27]

Because the Bankruptcy Court did not make specific factual findings on damages actually incurred, the record is insufficient to permit a review of those findings for clear error.

---

[26] *Seaton,* 462 B.R. at 595.

[27] Given that Ms. Hafer appeared at the May 1 status hearing without counsel, it is possible that Ms. Hafer's claimed attorneys' fees were incurred solely in her action to recover damages under § 362(k)(1). There is a circuit split on whether such damages are permissible under the statute, and the Fourth Circuit has yet to address the issue. *See Sternberg v. Johnston,* 595 F.3d 937, 940 (9th Cir. 2010) (holding that a debtor "can recover as actual damages only those attorney fees related to enforcing the automatic stay and remedying the stay violation, not the fees incurred in prosecuting the bankruptcy adversary proceeding in which he pursued his claim for those damages"). *But see In re Repine,* 536 F.3d 512, 522 (5th Cir. 2008) ("[I]t is proper to award attorney's fees that were incurred prosecuting a section 362(k) claim."); *In re Duby,* 451 B.R. 664, 677 (B.A.P. 1st Cir. 2011) (holding that attorneys' fees incurred as a result of pursuing an automatic stay violation action are recoverable under § 362(k)(1)).

Accordingly, the matter must be remanded to the Bankruptcy Court for findings of fact on: (i) Ms. Hafer's hourly income, and (ii) the attorneys' fees actually incurred by Ms. Hafer as a result of the May 1 status hearing.

**IV.**

For the reasons stated above, the decision of the Bankruptcy Court is affirmed insofar as the Bankruptcy Court's conclusion that a willful violation of the automatic stay occurred. Additionally, the matter is remanded to the Bankruptcy Court for further findings of fact on the issue of damages.

An appropriate Order will issue.

Alexandria, VA
April 25, 2014

/s/

T. S. Ellis, III
United States District Judge
